UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL S. KEMPNER, INDIVIDUALLY AND ON BEHALF OF A CLASS CONSISTING OF CONNECTICUT CITIZENS WHO RESIDE IN MUNICIPALITIES OTHER THAN GREENWICH <br> Plaintiff, <br><br> vs. <br><br> TOWN OF GREENWICH, <br><br> Defendant. | CIVIL ACTION NO. <br> 3-06-cv-1393 (JCH) <br><br> JULY 23, 2007 |

**RULING RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 8), DEFENDANT'S MOTION TO DISMISS (DOC. NO. 18), AND DEFENDANT'S MOTION TO DISMISS CLAIM FOR INJUNCTIVE RELIEF ON MOOTNESS GROUNDS (DOC. NO. 30)**

**I.    INTRODUCTION**

The plaintiff, Paul S. Kempner, ("Kempner"), filed this class action on August 29, 2006, against defendant Town of Greenwich ("Town"), asserting violation of his rights under the First Amendment to the Constitution of the United States, as enforced under 42 U.S.C. § 1983, and under the Common Law and Constitution of the State of Connecticut. Kempner alleges that the Town's Park/Beach Pass Policy (the "Policy") unlawfully discriminates against non-residents of the Town by charging them more to enter the park than Town residents. He seeks an injunction preventing the Town from enforcing the Policy, nominal damages, attorneys fees, and costs for this action.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true and construes them in a manner favorable to the pleader. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), Fed.R.Civ.P, tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). However, "bald assertions and conclusions of law will not suffice" to meet this pleading standard. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Marakova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff generally has the burden of proving by a preponderance of the evidence that jurisdiction exists. Id.

### B. Motion for Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### III. FACTUAL AND PROCEDURAL BACKGROUND

Kempner is a man over the age of 65 (Dec. of Joseph Bainton, § 26, Doc. No. 35), who resides in Stamford, Connecticut. Pl.'s Mem. in Support of Motion for Summary Judgment (hereinafter "Pl.'s Mem. in Supp."), Att. 1 at 1 (Doc. No. 8). On June 8, 2005, Kempner was issued a summons by the Town of Greenwich for simple

3

trespassing for riding his bike in the Town park of Todd's Point without having paid the beach admission fee. Id. at 1. At the time Kempner's summons was issued, the Town's Beach Access Policy allowed Greenwich residents over the age of 16 to buy a beach pass for $27 that granted them unlimited access to the Town's public beaches for the "high season," the time between May 26, 2006 and September 17, 2006. Mem. in Support of Def.'s Mot. to Dismiss, Ex. A (Doc. No. 19). Non-residents of Greenwich over the age of five could enter the Town's public beaches only after paying a $10 daily entry fee. Id. The Town refused to issue Kempner the same beach pass that it issues to Greenwich residents. Pl.'s Mem. in Supp. at 2 (Doc. No. 8). Kempner continued to ride his bike to the park and refused to pay the fee; the Town billed Kempner $120 for entering the park 12 times during the high season in 2005.[1] Id.

On April 17, 2006, Kempner filed a class action complaint in the Superior Court of the Judicial District of Stamford/Norwalk and amended that complaint on August 29, 2006. Class Action Complaint and Amended Complaint, Ex. A at 3 and 8 (Doc. No. 1). On September 1, 2006, he filed a Motion to Certify the Class with that court. Id. at 13. The Town removed the case to this court on September 5, 2006 (Doc. No. 1).

On February 9, 2007, the Town revised its beach access policy. Def.'s Mot. to Dismiss Claim for Inj. Relief on Mootness Grounds at 1 (Doc. No. 30). The new beach access policy ("beach access policy") lowered the entry fee for non-Greenwich

---

[1]Kempner states that these charges were incurred during the period between September 13 and October 7, 2005. Pl's Mem. in Supp. at 2 (Doc. No. 8). The Town does not dispute that Kempner was charged ten dollars per visit for ten visits during that season. Def.'s Rule 56(a)(2) Statement at 3 (Doc. No. 20). The court notes that the time frame for these visits may be in error since the high season in 2006 ended on September 17 and presumably ended on the same or similar date in 2005.

residents to $6 and granted all senior citizens over the age of 64 unlimited free access regardless of residence. Mem. in Supp. of Def.'s Mot. to Dismiss Claim for Inj. Relief on Mootness Grounds, Ex. A (Doc. No. 31). The Town expanded the high season slightly, to run between May 1, 2007 and October 31, 2007. Id. The New Policy retains the resident-only Beach Pass for $27. Id.

## IV. DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Article III, Section 2 of the United States Constitution limits federal court jurisdiction to actual cases and controversies. Jefferson v. Abrams, 747 F.2d 94, 96 (2d Cir.1984). The controversy must exist at every stage of the proceeding. Id. (citing Roe v. Wade, 410 U.S. 113, 125 (1973)). "When 'the parties lack a legally cognizable interest in the outcome' of a case it is moot and the federal courts lack jurisdiction. Muhammad v. City of New York Dept. of Corrections, 126 F.3d 119, 122 (2d Cir. 1997)(quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

The Town argues that Kempner's claim for injunctive relief is moot because the change in the beach access policy has eliminated any fee Kempner would have to pay to enter the park. This argument falls under the mootness doctrine of "voluntary cessation" whereby the challenged law is changed before the case is resolved. See ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5.4 (4th ed. 2003)(general description of the exception). In the Second Circuit,

> "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. Where, as here, the defendant is a government

5

> entity, some deference must be accorded to a legislative body's representations that certain conduct has been discontinued."

Lamar Advertising of Penn, LLC v. Town of Orchard Park, 356 F.3d 365, 375 (2d. Cir. 2004)(internal quotations omitted). However, "the amendment or repeal of an allegedly unconstitutional legislative provision will not necessarily moot litigation already underway." Id. at 377.

The Second Circuit has recognized that, "under certain circumstances, an individual may bring suit in a representative capacity without seeking certification as a class action. In such a case, the suit may survive even after the plaintiff ceases to have a legally cognizable interest in its outcome." Muhammad, 126 F.3d 119, 123 (summarizing Brandon v. Board of Education, 635 F.2d 971, 973 (2d Cir. 1980) and Trachtman v. Anker, 563 F.2d 512, 514 (2d Cir. 1977)). The Court in Trachtman was satisfied that, even after the plaintiff graduated from high school and thus ceased to be a student of the school he was suing, "a proper adversary relationship [existed] to assure proper presentation of the issues." Trachtman, 563 F.2d at 514; but see The Board of School Commissioners of the City of Indianapolis v. Jacobs, 420 U.S. 128, 130 (1975)(holding that claims against school system brought by students who had since graduated were moot without proper class certification).

The Second Circuit has distinguished Trachtman several times where the plaintiff had not asserted his or her intention to represent a class. See Muhammad, 126 F.3d at 124; Fox v. Board of Trustees of the State University of New York, 42 F.3d 135, 142 (2d Cir. 1994); Cook v. Colgate University, 992 F.2d 17, 20 (2d Cir. 1993). However, that is not the case here. Like the student in Tractman, Kempner has sought from the

6

commencement of this litigation to vindicate not only his rights but the rights of other non-Greenwich residents and has asserted his intention to represent the class of all non-Greenwich residents who desire to use Greenwich parks.[2] Trachtman, 563 F.2d at 514; Am. Compl. Ex. A at 3 (Doc. No. 1). Also, as in Trachtman, there is a "proper adversary relationship here to assure proper presentation of the issues," especially given that Kempner's other claims are not mooted by this change. Id. The court finds that it has subject matter jurisdiction over Kempner's claim for injunctive relief because he has brought this suit in a representative capacity.[3] The Town's Motion to Dismiss Kempner's claim for injunctive relief for lack of subject matter jurisdiction is denied.

**B.     Motion to Dismiss For Failure to State a Claim**

**1. Kempner has properly plead a violation of his 1st Amendment rights.**

The Town argues that Kempner's claim should be dismissed because he has

---

[2] A motion to certify class was filed with the Superior Court (Doc. No. 9) before this case was removed and that motion was withdrawn without prejudice (Doc. No. 23) and has not been refiled. Kempner asked the Superior Court to certify the class in his Amended Complaint and while arguing for Summary Judgment. Amended Complaint, Att. 1 at 12 (Doc. No. 1); Pl.'s Mem. in Support of Motion for Summary Judgment (hereinafter "Pl.'s Mem. in Supp."), Att. 1 at 4 (Doc. No. 8). In the Declaration from Kempner's Attorney J. Joseph Bainton, Mr. Bainton states that non-Greenwich residents of Connecticut younger than 65 have offered to join Kempner as class representatives or to file a separate action in contemplation of consolidation with this action. Decl. of J. Joseph Bainton, ¶¶ 28-30 (Doc. No. 35).

[3] This finding is especially appropriate given the agreement by the parties, at the Town's suggestion, to postpone the issue of class certification pending determination of the merits of Kempner's claim. Tel. Conf. on Sept. 26, 2006 (Doc. No. 16). Absent that agreement, joined in by the court, the court would have taken up the pending Motion for Class Certification. Had Kempner successfully moved this court for class certification prior to the change in the beach access policy, it is likely that his claim for injunctive relief would have been preserved because "the termination of a class representative's claim does not moot the claims of the unnamed members of the class." Comer v. Cisneros, 37 F.3d 775, 797 (2d Cir. 1994)(internal quotations omitted). This consideration may still prove relevant in the future since "under the appropriate circumstances, class certification may relate back to the filing of the complaint." Id. at 798.

7

failed to allege that he intends to engage,[4] in protected speech in one of the Town's Parks. Def.'s Mem. in Supp. of Mot. to Dismiss at 17 (Doc. No. 19). The court disagrees.

Kempner states that he would like to enter the Park "to have the opportunity from time to time to speak with the press and other Connecticut citizens regarding his views on Leydon and related topics." Amd. Compl. at 2 (Doc. No. 1). The Town argues that because Kempner desires to engage in this activity "while riding his bicycle with others or while otherwise [in] a Town of Greenwich public park," his desire to speak is "incidental to conduct" and thus not protected speech, relying on the Second Circuit's decision in Young v. New York Transit Authority. Id. at 1-2; Def.'s Mem. in Supp. of Mot. to Dismiss at 25, (Doc. No. 19).

The Town's reliance on Young is misplaced. Young upheld a prohibition on particular conduct-- panhandling-- and found that panhandling was not "expressive conduct" and that any speech that arose from panhandling was "incidental" to the prohibited conduct. Young v. New York City Transit Authority, 903 F.2d 146, 153-4 (1990). Kempner does not allege that his bicycle riding is, in and of itself, expressive conduct nor that the speech in which he wishes to engage will arise incidentally from his riding. He alleges that he would like to engage in speech about current events, including the ongoing issue of beach access in Greenwich. That speech is protected

---

[4]The Town also argues that Kempner "does not allege that the summons or the trespassing charges had anything to do with speech or expressive conduct." Def.'s Mem. in Supp. of Mot. to Dismiss at 18 (Doc. No. 19). The court agrees that Kempner has not alleged a violation of his rights with regard to the trespassing charge, which forms the basis for his claim for nominal damages. If Kempner wishes to claim nominal damages he must replead his claim to include a violation of his rights regarding the cost of defending his trespassing charge.

from undue government intrusion by the First Amendment.

The court finds that Kempner's statement of intent to engage in protected speech in Todd's Point is a sufficient statement under Federal Rule of Civil Procedure 8 to state a claim pursuant to Section 1983. Therefore, the Town's Motion to Dismiss as to Kempner's 1983 claim is denied.

### 2. Kempner has properly plead a claim for overbreadth.

The Town argues that Kempner's facial challenge to the Town's Beach Access Policy fails to state a claim upon which relief could be granted. Def.'s Mem. in Supp. of Mot. to Dismiss at 29-36 (Doc. No. 19). The court disagrees. "The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges." Virginia v. Hicks, 539 U.S. 113, 118 (2003). A law is overbroad under this doctrine when it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." Reading the complaint in the light most favorable to Kempner, the Town's Beach Access Policy has no legitimate purpose. Amd. Compl. at 4 (Doc. No. 1)("Nor is there any legitimate explanation for Greenwich's continued discrimination against Connecticut citizens who reside in municipalities other than Greenwich. . . ."). Kempner should have the opportunity, as Hicks did, to show, "based on the record . . . that the [policy] as a whole prohibits a 'substantial' amount of protected speech in relation to its many legitimate applications". Hicks, 539 U.S. at 123-4. At this point, the court has no such knowledge as to the amount of protected speech inhibited or the legitimate scope of the beach access policy. Kempner has plead an overbreadth claim and should have the opportunity to present evidence in support of his claim. The portion of the Town's Motion to Dismiss

9

Kempner's facial challenge to the policy under the First Amendment is therefore denied.

### 3. Kempner has not properly plead a claim under the Connecticut State Constitution or the Common Law of Connecticut.

The court's reading of Kempner's complaint is that, in addition to his cause of action for violation of his First Amendment rights as enforced under section 1983, he has sought to plead a cause of action for violation of the Connecticut Constitution and the Common Law of Connecticut. However, his only mention of Connecticut law in his Amended Complaint is that he wishes "exercise from time to time all of the Federal and State Constitutional rights cited by the Supreme Court of the State of Connecticut in Leydon v. Greenwich. . . ." Am. Compl. at 2. This statement fails to satisfy the pleading requirements of Rule 8 because it does not provide a "short and plain statement" of what violation of state law Kempner complains, or even when it arose. Fed. Rule of Civil Proc. 8(a)(2). Therefore, the Town's Motion to Dismiss Kempner's State Constitutional and State Common Law claims is granted, those claims are dismissed without prejudice, and Kempner is free to replead them.

### C. Motion for Summary Judgment

Kempner's Amended Complaint alleges that the Town violated his rights under the First Amendment of the Constitution ("First Amendment"), as enforced through 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. While section 1983 "'is not itself a source of substantive rights' . . . [it] provides 'a method for vindicating federal rights elsewhere conferred,' such as those conferred by the First Amendment to the Constitution." Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

The First Amendment provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peacefully assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. To support his claim, Kempner relies on the Supreme Court of Connecticut's holding in Leydon v. Town of Greenwich that the park access policy before the court in that case violated the First Amendment. See Leydon v. Town of Greenwich, 257 Conn. 318 (2001). While the holding in that case is instructive, the court finds that this case presents a substantially different beach access policy. Therefore, this court will undertake the analysis of whether or not the policy at issue violates Kempner's rights under the First Amendment.

The first step in determining whether the Town's beach access policy violates Kempner's First Amendment rights to speech and association is to determine if the behavior that he wishes to engage in is, in fact, speech protected by the First Amendment. Cornelius v NAACP Legal Defense and Education Fund, Inc., 473 U.S. 788, 797(1985). Having already determined that it is, the court must next determine the nature of the forum "because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." Id. Finally, the court must determine "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." Id.

"Under the prevailing constitutional framework, speech restrictions imposed by the government on property that it owns are analyzed under the 'forum based' approach." Hotel Employees & Restaurant Employees Union, Local 100 of New York, NY v. City of New York Dept. of Parks and Recreation, 311 F.3d 534, 544 (2d. Cir. 2002)(quoting Int'l Soc'y for Krishna Consciousness v. Lee, 505 U.S. 672, 678 (1992)). "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 44 (1983). In defining rights associated with a traditional public forum, the Supreme Court has written that:

> "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."

Id. at 45 (internal quotation omitted). Both parties agree that Todd's Point is a traditional public forum.[5]

In a traditional public forum, the government may impose "content neutral time, place and manner restrictions on speech . . . so long as those restrictions are narrowly tailored to serve a significant government interest, and leave open ample alternative

---

[5] The court notes that the Supreme Court of Connecticut determined in Leydon that Greenwich Point is a traditional public forum after extensive review of the indicia of a traditional public fora. Leydon v. Town of Greenwich, 257 Conn. at 339. Although that court did not address the classification of Todd's Point specifically, both parties concede that the Leydon court's holding as to Greenwich Point is also applicable to Todd's Point.

12

channels of communications." Hotel Employees, 311 F.3d at 545. Such "[r]egulations of the use of a public forum that ensure the safety and convenience of the people are not inconsistent with civil liberties but . . . [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend." Thomas v. Chicago Park District, 534 U.S. 316, 322 (2002)(internal quotation omitted).

The Town's Beach Access Fee, while not specifically directed at speech, is a restriction on speech because it effects "access" to a traditional public forum. As one scholar summarized, the "Public Forum doctrine recognizes that, by denying speakers access to those areas in which potential listeners are most likely to concentrate, even a law not directed at speech can amount to an infringement of the right to free speech, because it substantially interferes with a vital means of exercising that right." Michael C. Dorf, *Incidental Burdens on Fundamental Rights*, 109 Harv. L. Rev. 1175, 1208-9 (1996). The Supreme Court recognizes that the "right to access" government property is inseparable from the right to speak there. See, e.g., Taxpayers for Vincent, 466 U.S. at 814 (appellees "fail to demonstrate the existence of a traditional right of access respecting such items as utility poles for purposes of their communication comparable to that recognized for streets and parks"); Perry, 460 U.S. at 44. Therefore, the court finds that an entry fee to the park is a restriction on speech.

The test for whether such a restriction is constitutional is whether the restriction is "justified without reference to the content of the regulated speech, that [it is] narrowly tailored to serve a significant governmental interest, and that [it leaves] open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)(internal quotation omitted).

The Town's beach access policy easily satisfies both the content neutrality and ample alternative channels portions of the test. "Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." Id. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id. The court finds that the Town's beach access fee is content neutral because it effects access for all non-residents equally without regard to their expressive conduct. Likewise, the requirement that the restriction "leave open ample alternative channels of communication" is easily met. The Public Beaches are clearly not the only available fora in Greenwich for Kempner's speech.

This leaves the most difficult aspect of the test: whether the restriction is "narrowly tailored to serve a significant government interest." Kempner has failed to show that there is no disputed issue of material fact as to this question. Deciding whether the restriction is narrowly tailored to serve a significant government interest requires that the court review the government's goals in enacting the policy, which are disputed between the parties. See Def.'s 56(a)(2) Statement at 7 ¶ 3. The court can only determine whether the policy is "narrowly tailored to serve a significant government interest" when it has made a determination as to what that government interest is.

Because he has failed to demonstrate that there are no disputed issues of material fact, Kempner's Motion for Summary Judgment is denied on the record before the court.

## V. CONCLUSION

For the forgoing reasons, the Defendant's Motion to Dismiss Claim for Injunctive

Relief on Mootness Grounds (Doc. No. 30) is DENIED, Defendant's Motion to Dismiss (Doc. No. 18) is DENIED in part and GRANTED in part, and Plaintiff's Motion for Summary Judgment (Doc. No. 8) is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 23rd day of July, 2007.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge